Good morning, Your Honors. May it please the Court, my name is Jixian Li and I represent the Petitioner. In this case, the BIA assumed Petitioner too credible, but the BIA found that Petitioner did not adequately cooperate his claim and required Petitioner to submit additional evidence. In so doing, the BIA failed to comply with the Court's decision in Reign. So can you address whether you exhausted that issue because that sort of claim that the IJ didn't do enough to give your client time to corroborate wasn't, I didn't see it being raised in your appeal to the BIA. Yeah, yeah, that's correct, Your Honor. Petitioner did not raise a specific issue relating to whether or not he should be given an opportunity to obtain the required document. However, the issue relating to the wife's letter was specifically mentioned in the Petitioner's brief. In this Court, the exhaustion doctrine is not applied in a formalistic manner. So therefore, if the BIA, the agency, was unnoticed of the issue, was presented with the issue, and that should be sufficient. In addition... What your client said about getting a letter from his wife is that he thought it wouldn't be necessary. And yet at the master calendar hearing, the immigration judge said pretty plainly and counsel acknowledged that he was going to need more. Yeah, that's right, Your Honor. But why didn't he have more? Yeah, Petitioner did have more. After the master hearing, the Petitioner did submit the marriage certificate, the household registry showing that he's married and they have a son. That's not really what the claim is much about. I mean, it isn't enough that he's married. The question is, what happened that caused him to think that he needed to flee the country, that he was a refugee? And what evidence was submitted on that subject? I think the composition of Petitioner's family... Was there any evidence submitted on that subject other than his testimony? No, Your Honor. So in response to the IJ's admonition that he needed more evidence, he produced evidence on things that really weren't at issue and didn't produce evidence on the critical issue. Is that right? Yeah. So how is it that the requirement for corroboration is unjustified? Your Honor, actually, the opportunity to give Petitioner an opportunity to come up with additional evidence, that requirement only became a law only after the court made a decision in Wren. In this case, I believe Petitioner is not required to exhaust administrative remedies based upon events that occur after the briefing to the BIA has been completed. In this case... Well, the Petitioner in Wren obviously raised the argument that under the statute, the IJ had to give him an opportunity to corroborate. So your client could have raised that concern as well. The only explanation that was given in the appeal to the BIA was he didn't ask his wife for a corroborating statement because she didn't have much education and doesn't know how to write. And so the lack of a corroborating statement should be excused. So there was nothing about notice or any reference to the statutory requirement. Oh, there's about notice, your Honor. Petitioner, in this case, might have expected the judge to get a letter from his wife, but because the wife didn't know how to write, so he didn't know that the wife could have get someone else help in preparing the statement. So he didn't argue that he didn't have notice that that letter was going to be which is not the Wren issue, as I understand Wren. And after it was pointed out to the Petitioner that he could have get someone else helping his wife in getting the letter, in preparing the statement, then the IJ, in all fairness, should have continued the hearing and given the Petitioner an opportunity to have someone to find someone to help. It's not hard to figure out if you've been asked for corroboration, you should come up with corroboration on the issue that matters. And he didn't say, I couldn't find somebody. He said, and he was asked specifically, did you ask her if she could find someone to help her with the statement? No, I didn't tell her this. I mean, that's not trying very hard to get corroboration and leads to question whether corroboration would really be available. In Petitioner's circumstances, I think that's reasonable because he knew that the wife could not arrive. So what's the point of getting a letter from the wife? And also, if we look at the DIA... Do you have any clients that are illiterate in English that you wind up preparing statements for them to sign? I mean, that's not hard to imagine, is it? No, not at all, Your Honor. But his response was, I didn't think of it. I didn't tell her this. And also, if you look at the BIA's own precedent decision, the BIA has repeatedly discounted the property value of a letter from family members saying that that's from an interested party who is not subject to... How is it logical, if you're concerned that the BIA may not value that kind of letter, that you decide, well, then I won't submit anything at all? Did he get anything that documented the fact of the abortion and submit that? Did he get a statement from anybody else that documented the fact of the abortion? The answer to that is that the judge has an obligation. Once the petitioner is found credible, the IG, the agency has an obligation to ask, to give an opportunity to obtain the document or explain why that document has not been produced. In this case, the petitioner has never been asked... That's not an explanation. It's not a very compelling one. But if you look at the background information in record, they were saying that the abortion certificate would not be available. And so the judge has never, the petitioner in this case, has never been asked the question that whether or not the medical record of the abortion or sterilization is available. So all we are asking is the opportunity to produce, either to produce or to explain. But in this case, the petitioner has not been given this opportunity. Do you have any such documentation in your possession today? No, Your Honor, not really. Years have passed since then, and you're wanting us to believe that it might be produced, but you don't know whether it could be produced or not. That's right. But at least the petitioner should be given an opportunity to explain whether or not... Counsel, I'm having great difficulty with the fact this occurred, and his one-month detention occurred in 1992. That's 16 years ago, and he's lived in China openly ever since. How is there any reasonable fear of future persecution? We are not arguing about the future fear of persecution in this case. What we are arguing is that there's a past persecution because part of the persecution relates to the wife's sterilization. That's a permanent harm. So therefore... But not to him, not to your client, to the wife it is, but not to your client. That's right, but... So he has to show a well-founded fear of future persecution, correct? Yeah, that's right, Your Honor. He can't say, well, my wife has a continuing... But the wife... So what is his well-founded fear of future persecution? But the wife's sterilization is part of his persecution. That's what the law says, under the law, that because actually... Well, the law says resistance to coercive population control program, his resistance to the program. Well, that expired 16 years ago. What has he done since? Nothing. And also, when the court finds that the petitioner has suffered past persecution, actually the burden shifts to the government to come up with evidence to rebut the well-founded fear of future persecution. And also, usually, the personal circumstances... So in other words, you're asking us to ignore the fact that he's lived openly without any fear for 16 years? Actually, that issue is... I don't think that issue is before this court, Your Honor. You've... I'm almost running out of my time. We'll give you a minute on rebuttal. Thank you, Your Honor. Good morning, Your Honors. My name is Michelle Sarko. I'm representing the respondent, Attorney General Sessions, in this matter. May it please the court, the petitioner is a native and citizen of China who entered the United States in September of 2008. In June 2009, he filed an affirmative asylum application regarding events that he claims occurred to him and his spouse in 1992, some 16 years prior to his departure from China. There are three issues essentially in this case. The first is the exhaustion issue, whether he exhausted in his appeal brief to the board the notice and need for corroboration documents and time to provide them. We would submit that he did not exhaust that in his board. He indeed said almost nothing. Basically, what he said was IJ requests response credibility and he stated he didn't ask his wife for corroborating statement. However, he did give a clear answer to that. This is... I'm reading from the petitioner's brief on appeal. She doesn't know how to write. The IJ seems to suggest she should ask a son or someone to assist her in preparing a statement for this purpose. However, if anyone caught in a response situation would know that it is an idea that hurts everyone involved, emotionally it's very difficult for his wife or him to divulge these terrible, embarrassing, humiliating incidents and privacy information to his high school-aged son or anyone else. And it's indeed more difficult for a respondent to raise a request for his wife to work with someone else on such a statement. His lack... response lack of corroborating statement from his wife should be excused. So in other words, he doesn't say that he couldn't have gotten the statement or they didn't... that he's making efforts to or what he said is I shouldn't have to because it's an embarrassing situation. Opposing counsel, if I'm understanding correctly, argues that he wouldn't know to raise the three steps of Wren until after Wren was decided, which occurred after his appeal. Yes, well it's true that Wren came out after he submitted his appeal brief, but his case was still before the board at that time. And so he could have filed a supplemental brief, motion to remand, attach any letters that he was able to obtain, and do the motion to remand to get it back before the immigration judge. He didn't do any of those steps that he could have taken. I would also point out that in the closing argument of government counsel before the immigration judge, he raised credibility issues and the lack of corroboration that he thought was significant and could arrest a favorable decision for the government. So he was on notice, certainly through the closing argument that corroboration was going to be an issue and credibility was going to be an issue because that was put forth by DHS. I would also point out, I think one of the judges mentioned that when he was questioned about why he couldn't get a document, a letter from the wife... I'm sorry, let me find that. He said he thought it wouldn't be necessary. Why didn't you get a statement? Well, that was from the classmate. He thought it wouldn't be necessary. Why didn't you get one from the wife? She doesn't know how to write. Couldn't you find someone? No, I didn't ask her to do this. So essentially he didn't even try from the classmate that had been hiding the wife, which there was no reason that the board wouldn't have given that adequate weight. And also, even with respect to the wife, in some instances, yes, the board has given less weight to family members' affidavits, but in this one, since she was central to the issue in this case about whether she was sterilized and given an abortion, I think they would have given it some weight. But let me ask you about the past persecution ruling that the IHA is finding no past persecution. How do we analyze that in light of Jiang? So he was detained for a month after he accosted the family planning officials. And we look at that in conjunction with the... abortion of his wife. So was that resistance for... does that count as part of his persecution, resistance for opposing family planning? In this case, no, but I want to say that in some cases it could, but in this case, no, because of the timing of what occurred. He didn't make any overt objection to the family planning policies in China prior to the family planning officials coming and finding his wife and taking her for the abortion sterilization. He only found out afterwards that they had taken... But he was in prison for a month, that was after the fact. I think Judge Ikuta was saying before that... asking me about whether you could count the abortion and sterilization of the wife towards his claim of having past persecution. So that's what I was explaining. As far as the detention, yes, it was a month-long detention, but he testified that there was no abuse, there was no questioning, nothing he had to sign. Basically he just sat there and then one day they let him out a little bit shy of a month. And after that, nothing happened to him in the 16 years that he lived in China before he decided that he wanted to come to the U.S. And when asked why he wanted to come to the U.S., he said he wanted to change his stars. So I would say that his wanting to come to the U.S. was not necessarily because of any persecution that he thought he had suffered. We would submit that the one-month detention with nothing else did not rise to the level, wasn't severe enough to constitute past persecution. And so is it your position that in order for the wife's abortion and sterilization to constitute persecution for resistance, his resistance has to happen before that occurs? Yes, that would be our position. And is getting his wife pregnant, in the face of a family planning policy, is that considered resistance? We would say no. That is not... And then how do you distinguish Jiang? You know, I don't have Jiang with me. I didn't review it last night, so I apologize for that. I can submit a letter if the court would like on that particular issue. I think that's in your briefs. Okay. I'm sorry I didn't write the brief, but I should have reviewed it. I lost my train of thought. Sorry. What's your response to the passage in Wren that the IJ must give the applicant notice of corroboration that is required and an opportunity either to produce it or to explain why? Was that opportunity provided here clearly? It was not provided the way that Wren sets it out. Because in Wren, the court said, once you make your credibility determination, if you find the person credible, but you can still ask for additional corroboration evidence. I think Wren wants that first determination and then can ask for corroboration and wants the immigration judge to specifically identify the corroboration that he would want and then give an opportunity. Now, Wren was not out at the time when the immigration judge made his decision. So I think he was looking at the statute, trying to follow the way he viewed the statute, and did ask at the beginning after looking at the statement before the merits hearing, I mean, at the beginning of the merits hearing. Are you arguing that Wren doesn't apply in this case? Well, what I would argue is it doesn't apply because the petitioner waived it on appeal. He failed to exhaust it on appeal to the board. He could have made all the arguments that Wren made to the board. This case could have been Wren, but he didn't make those arguments. So he failed to exhaust it on appeal. You're out of time now. Okay. Well, we would just submit that substantial evidence supports the government's, the board's decision in this case. And that he failed to exhaust the notice and opportunity to be heard issue on appeal to the board. Thank you. We'll give you a minute for rebuttal. I think that the law is clear that it says that where the BIA has addressed an issue, that issue has not been, has been exhausted. In this case, the BIA clearly, in his decision, cited the Wren. So that shows in answer to the court's question that the Wren clearly applies to this case because the BIA addressed, specifically cited the Wren case. And also, Your Honor, I just want to add one more thing that the petitioner was reasonable in focusing his discussion in his brief to BIA on the credibility issue. Actually, Judge Ikuta wrote a decision in Wren v. Sessions, 861 F3rd 1003. And in Wren, the court holds that if the IJ finds petitioner not to be credible, then the Wren does not apply. In this case, the IJ found the petitioner not to be credible. So therefore, before the IJ, the Wren does not apply. So therefore, it's very reasonable for the petitioner to focus his discussion in his brief to the BIA on the credibility issue. Where did the IJ find the petitioner to be credible? Oh, actually, the IJ just assumed the petitioner to be credible regarding the one-month detention. That's the only—the IJ never said that you are credible when you said that your wife— There's no broad credibility—affirmative credibility finding. I mean, you said—referred to it a few times. It's true there is no adverse credibility finding, and that has legal implications. But the IJ may have accepted as true the one-month detention. The IJ did not accept as true the connection of that, or the alleged connection of that, to something that happened to his wife, because he was waiting for proof of the abortion and sterilization, and that wasn't forthcoming. Yeah. So the IJ used the lack of cooperation, actually, in the context of credibility analysis, if we read the IJ's decision closely. It's not that the IJ said, oh, I found you credible, but even if you were credible on the abortion, on the sterilization, on the one-month detention, that would still not be enough. We still need more—need you to come up with more cooperative evidence to bolster your claim. Actually, that's not the IJ's decision. So therefore, what I'm saying is that the exhaustion doctrine should not be—my client should not be held responsible under that, because it's very reasonable for him to focus on the—to challenge the IJ's credibility determination when he presented his argument before the BIA. Thank you, Your Honors. Thank you. The case of Dixi Liu v. Sessions is submitted.
judges: O'scannlain, Clifton, Ikuta